UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL J. CARLSON,

        Plaintiff,

v.                                                CIVIL CASE NO. 05-60035
                                                 HON. MARIANNE O. BATTANI

RECKITT BENCKISER, INC.,

        Defendant.

_____/

**OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

Before the Court is Defendant's Motion for Summary Judgment (Doc. #12). Plaintiff filed suit against Defendant for unlawful age discrimination in violation of the Elliot-Larsen Civil Rights Act. Defendant seeks summary judgment, contending it terminated Plaintiff's employment as part of an effort to improve the overall quality of its sales workforce, that there is no evidence of age-related animus, and that Plaintiff's claim for back and front pay should be dismissed because Plaintiff failed to mitigate his damages.

Defendant Reckitt Benckiser ("RB") is a manufacturer of consumer packaged goods. RB was formed as the result of a merger between Reckitt & Colman plc and Benckiser N.V. Plaintiff began his employment with Benckiser in May 1994, and, as a result of the merger, began working for RB in January 2000. From January 2000, until his termination in July 2003, Plaintiff held the position of Customer Strategy Manager, and was assigned almost exclusively

to the K-Mart account.  In that position, Plaintiff was responsible for reviewing customer sales data and developing strategic initiatives to ensure that RB's products were carried by K-Mart's stores.  Plaintiff's responsibilities entailed, among others, to help RB compete for shelf space at K-Mart stores and to support the company's efforts to sell its products to K-Mart.  He was also required to evaluate existing sales and marketing programs for their effectiveness.

During his employment with RB, Plaintiff received three annual performance ratings, covering the calendar years 2000, 2001, and 2002.  The available ratings categories for 2001 and 2002 were "D" for "developmental," "A" for "Adequate," "S" for "Strong," "VS" for "Very Strong," and "O" for "Outstanding."  The ratings categories were the same in 2000, with the exception that there was no "Adequate" rating.  Defendant contends that a "Strong" rating, in the overall rating section, signified only average performance.  Dep. of Berryman, at 20.  Plaintiff never received an overall rating higher than "Strong," for any of his three annual performance ratings at RB.  Plaintiff conceded that there was room to strengthen his performance.  Dep. of Carlson, at 108, 141.

Specifically, for his 2000 rating, Plaintiff's then first-level manager, Joe Dachowicz, gave
Plaintiff an overall rating of "Strong."  2000 Performance & Development Review at RB00016.  Plaintiff received a spectrum of ratings from "low" to "strong," where "strong" was the highest rating, on a range of subcategories.  Plaintiff did not disagree with his 2000 rating.  Dep. of Carlson, at 98.

For his 2001 rating, a different first-level manager, Ed Field, gave Plaintiff an overall rating of "Adequate."  2001 Performance & Development Review, at RB 00013.  Plaintiff

2

received this rating because he failed to meet a profit goal for that year. Dep. of Carlson, at 102. Plaintiff believes that he should have received a "Strong" rating for 2001, because of the ratings he received in the subcategories of performance. Id. Plaintiff agreed with Field's assessment that he was "Adequate" on three subcategories of this 2001 rating: "sets and achieves ambitious goals"; "takes initiative, is proactive"; and, "entrepreneurship-takes calculated risks." Id., at 103, 2001 Performance & Development Review, at RB00011.

Plaintiff received an overall rating of "Strong" for calendar year 2002. 2002 Performance & Development Review, at R130001. However, his then first-level manager, James McIntyre, rated Plaintiff "Adequate" on several subcategories, including: "Takes initiative. Is pro-active" ; "Offers independent ideas. Challenges the status quo"; "Generates novel ideas, avoids early conclusions"; "Produces flexible contingency plans to cope with changing business conditions"; "Is able to develop a Compelling vision of the future"; "Effectively manages relationships and builds networks"; and, "Constructively challenges others views and assumptions." 2002 Performance & Development Review, at RB0003-05. Plaintiff agreed that McIntyre gave him a "fair and objective rating" for 2002. Dep. of Carlson, at 105.

In a May 2003, national sales meeting in Florida, Javed Ahmed, who Plaintiff thought was President of RB's North American operations,[1] told the audience that the company has a rather old sales force. Dep. of Carlson, at 129. Plaintiff felt this comment was improper because he believed that Ahmed was intimating that some members of the sales force should be replaced. Id., at 131. Also in early 2003, one of Plaintiff's former managers, Ed Field, nicknamed Plaintiff

---

[1] At the time, Ahmed was a Regional Director of North American Household Sales.

3

"the professor" because Plaintiff smoked a pipe. Plaintiff knew Mr. Field to invent nicknames and short descriptions of RB's employees. During a conversation with Plaintiff, Mr. Field relayed his description of him as, "there's old Paul setting out there in Detroit doing his job . . . . [s]moking his pipe waiting for retirement." Dep. of Carlson, at 122- 23.

In the Spring of 2003, RB instituted its "strengthen the bench" initiative to improve sales and promote successful sales representatives. Employees within the sales department were evaluated based on their skills and potential to fill management positions above their current positions. In order to promote, and employ, sales staff with the desired skills and acumen, RB terminated sales staff that lacked the desired qualities. Plaintiff, 56 years old at the time, was one of several employees that RB terminated in July 2003, as part of the "strengthen the bench" initiative. Another employee that worked on the K-Mart sales team was also terminated and replaced.

Plaintiff received a letter from the company dated June 30, 2003, notifying him that he would be terminated effective July 28, 2003. The letter read, in part: "As our business continues to change and evolve we must also continue to review our resources. Staffing requirements receive the highest priority and all decisions are reached only after careful consideration. As a result of this process, your position has been eliminated." Def.'s Mot. for Summ. J., Ex. J. Five other employees received termination letters with that language. Three people had their positions eliminated, while Plaintiff and two others were replaced. The letter also advised Plaintiff that he would receive a severance package, which included salary and benefits continuation for twenty six weeks, payment for unused vacation days, and outplacement assistance. At Plaintiff's request, the company agreed to spread out the salary continuation

4

payments for a longer period to allow him to qualify for retiree medical benefits. These modified severance terms were set forth in a revised termination letter to Plaintiff dated July 15, 2003.

Three days after receiving his termination letter, a company-wide email was sent out by RB management. The email notified employees that RB had "realigned [its] sales structure" and listed Plaintiff's former position as open. Def.'s Mot. for Summ. J., Ex. K. Because Plaintiff was still employed by RB, he also received the email.

RB hired Rhonda West to fill Plaintiff's former position of Customer Strategy Manager in September 2003. According to her resume, West was previously employed for more than 16 years by K-Mart.

Following his termination, Plaintiff received salary continuation and benefits through May 15, 2004. Dep. of Carlson, at 21, 136-37. Plaintiff declined to utilize the outplacement services to assist him in finding another job, telling the company's human resources director that he planned to leave the industry and relocate. Id., at 137-38, Def.'s Mot. for Summ. J., Ex. 0. Plaintiff did not begin to look for replacement employment until September 2004. Dep. of Carlson, at 138. Plaintiff believed that if he took another job, that he would lose his continuation of benefits, and thus, his eligibility for retiree medical benefits. Instead, Plaintiff traveled in his Recreational Vehicle ("RV") for a year and a half. Id., at 12-13. His sole employment subsequent to his termination from RB was as a part-time maintenance worker, earning $7.00 per hour for 30 hours per week, at the RV park in Florida where he stayed during the winter months from October 2003, to April 2004; and again from October 2004, to April 2005. Id., at 13, 49, Def.'s Mot. for Summ. J., Ex. P, Pl.'s Answer to Interrogs. No. 7, at page 14.

Plaintiff testified that his efforts to seek full-time employment following his termination from RB were confined to the period September 16, 2004, to March 15, 2005. Dep. of Carlson, at 56-7. Plaintiff sent resumes and cover letters to thirty-two different companies between November 27, 2004, and March 15, 2005. Plaintiff stopped looking for full-time work altogether after March 15, 2005, and has only applied for jobs since December 2005. Dep. of Carlson, at 167, Aff. of Carlson, at para. 6. On his 2004 federal income tax return, dated February 7, 2005, Plaintiff described his current employment status as "retired." Dep. of Carlson, at 51, Def.'s Mot. for Summ. J,. Ex. R. Plaintiff conceded at his deposition that this description of his employment status is accurate and that he is currently retired, although not by choice. Dep. of Carlson, at 51-52.

## II.   STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

As the United States Supreme Court has ruled:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002). "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district

court - that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002). "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)(citation omitted)(quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)). To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, 477 U.S. at 249-50. "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002)(quoting Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  The evidence itself need not be the sort admissible at trial.  Tinsley v. General Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000).  However, the evidence must be more than the nonmovant's own pleadings and affidavits.  Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001).  The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant.  Anderson, 477 U.S. at 252.

### III.   ANALYSIS

MICH. COMP. LAWS ANN. § 37.2202(1)(a) provides in relevant part:

(1) An employer shall not do any of the following:
(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

A plaintiff can establish a *prima facie* case of age discrimination through direct or indirect evidence.  Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003).  In cases where there is no direct evidence of discrimination, age discrimination cases, like other discrimination claims, proceed through the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), burden-shifting analysis.  Lytle v. Malady, 579 N.W.2d 906, 915 n. 19 (Mich. 1998).  If the plaintiff establishes a *prima facie* case of discrimination, a presumption of discrimination arises.  Id., at 915.  The employer is then given the opportunity to overcome this presumption by articulating a legitimate, non-discriminatory reason for the contested employment action.  Id.  When such a reason is proffered, the presumption of discrimination drops from the case, and the burden shifts to the plaintiff to show that the proffered reason is a pretext for unlawful discrimination.  Id.

To establish a *prima facie* case of age discrimination, a plaintiff must show that he 1) is a

8

member of a protected class, 2) suffered an adverse employment action, 3) was qualified for the position, and 4) was replaced by a younger person. Lytle, 579 N.W.2d at 916.

Once a *prima facie* case is established, the employer is given the opportunity to offer a legitimate, non-discriminatory reason for the employment action. At this stage, the employer

> . . . need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted, and the factual inquiry proceeds to a new level of specificity.
>
> Once the defendant produces such evidence, even if later refuted or disbelieved, the presumption drops away, and the burden of proof shifts back to plaintiff. At this third stage of proof, in this case in response to the motion for summary disposition, plaintiff had to show, by a preponderance of admissible direct or circumstantial evidence, that there was a triable issue that the employer's proffered reasons were not true reasons, but were a mere pretext for discrimination.

Lytle, 579 N.W.2d at 915, *(*quoting Texas Dep't of Comm'y Affairs v. Burdine, 450 U.S. 248, 254-255 (1981).

Once a defendant proffers a legitimate, non-discriminatory reason, the burden shifts to the plaintiff to show pretext. In Lytle, the court addressed what a plaintiff must show to avoid summary judgment at this point. The court held that:

> [D]isproof of an employer's articulated reason for an adverse employment decision defeats summary disposition only if such disproof also raises a triable issue that discriminatory animus was a motivating factor underlying the employer's adverse action. In other words, plaintiff must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for age . . . discrimination.

Lytle, 579 N.W.2d at 916.

9

> There are three ways a plaintiff can establish that a defendant's stated legitimate, nondiscriminatory reasons are pretexts: (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision. The soundness of an employer's business judgment, however, may not be questioned as a means of showing pretext.

Dubey v. Stroh Brewery Co., 462 N.W.2d 758, 760 (Mich. Ct. App. 1990), see Clark v Uniroyal Corp., N.W.2d 372, 374 (Mich. Ct. App. 1982), Pomranky v. Zack Co., 405 N.W.2d 881, 884 (Mich. Ct. App. 1987). Thus, the first two ways require the plaintiff either to show that the proffered reasons are "factually false," Manzer v. Diamond Shamrock, 29 F.3d 1078, 1084 (6th Cir. 1994), that "the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup," Id., or "showing that the proffered reason is not worthy of credence." Clark, N.W.2d at 375. "The third showing . . . consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." Manzer, 29 F.3d at 1084.

Plaintiff first points to Ahmed's comment during the May 2003, sales conference as evidence that Defendant impermissibly terminated his employment because of his age. When deciding if a comment is evidence of discrimination, the Court must consider "whether the comments were made by a decision maker or by an agent within the scope of his employment; whether they were related to the decision-making process; whether they were more than merely vague, ambiguous, or isolated remarks; and whether they were proximate in time to the act of termination." Cooley v. Carmike Cinemas, 25 F.3d 1325, 1330 (6th Cir. 1994). In this case, Ahmed's comment regarding RB's old sales force is not evidence of discriminatory intent

because there is no evidence that Ahmed took part in the decision to fire Plaintiff, and it is merely a vague, ambiguous, and isolated remark.[2] There is no evidence that Ahmed played any role in the decision to terminate Plaintiff's employment, or that Ahmed has a history of making ageist comments. Dep. of Carlson, at 132:7-10, Def.'s Mot. for Summ. J., Ex. C, Decl. of Murray, at para. 5. Thus, even though Ahmed was Regional Director of North American Household Sales, it does not qualify as evidence of discrimination.[3] Cf. Rose v. National Cash Register Corp., 703 F.2d 225, 227 (6th Cir. 1983) (evidence that included testimony that the vice-president of the midwest region informed plaintiff that, "Men your age, there isn't going to be any future in the new NCR" permitted the jury to conclude that the plaintiff was a victim of age discrimination.), Cooley, 25 F.3d at 1331 (second, and third-hand testimony of what the employer had said two decades earlier could have been prejudicial, however, because the employer was the ultimate decision maker, the comments against the aged were not vague, ambiguous, or isolated. Further, although the comments were not made in the context of the plaintiff's termination, they reflected a deep-rooted, ongoing pattern that is anything but isolated.).

Next, it must be determined if Plaintiff can show that the reasons for his discharge had no basis in fact, or if they have a basis in fact, that they were not the actual factors motivating the decision, or that other employees not in the protected class were not fired even though they

---

[2] While Plaintiff expressed shock, and felt that the comment was improper, Plaintiff was not sure what it meant, and agreed that RB's sales force could accurately be described as old. Dep. of Carlson, at 130-32.

[3] Plaintiff does not argue in his Response brief that the comments by Field are evidence of discrimination.

engaged in substantially identical conduct that motivated Plaintiff's discharge.  See Dubey, 462 N.W.2d at 760.

Plaintiff cannot make the third showing because there is no "evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff."  Manzer, 29 F.3d at 1084.  Plaintiff has presented no evidence that employees not in the protected class with similar performance reviews were not fired pursuant to Defendant's "strengthen the bench" initiative.

Nor can Plaintiff show that the reason for his termination was "factually false."  Manzer, 29 F.3d at 1084.  His performance reviews were less than stellar, he failed to meet a profit goal in 2001, and received a rating of "Adequate" or "Low" in a number of subcategories of performance review throughout his tenure with RB, as well as, receiving an overall rating of "Adequate" in 2001.  Specifically, Plaintiff consistently received low marks in: "Sets and achieves ambitious goals"; "Takes initiative, is proactive";  "Entrepreneurship-takes calculated risks"; "Offers independent ideas. Challenges the status quo"; "Generates novel ideas, avoids early conclusions"; "Produces flexible contingency plans to cope with changing business conditions"; "Is able to develop a Compelling vision of the future"; "Effectively manages relationships and builds networks"; and, "Constructively challenges others views and assumptions."  2001 Performance & Development Review, at RB00011, 2002 Performance & Development Review, at RB0003-05.  Plaintiff, for the most part, agrees with those assessments.  Dep. of Carlson, at 98,103, 105, 108, 141.  According to Defendant's "strengthen the bench" initiative, those are

critical qualities in assessing whether the employee was capable of filling a management position, and thus, whether retention was appropriate.

Finally, Plaintiff points to his termination letter, the fact that Defendant sought applicants for Plaintiff's job on the company website three days after he was fired, and Defendant's claim that Plaintiff was only an average performer to show that the employer's explanation is a pretext for age discrimination. Despite Plaintiff's accurate protestations that Defendant's contention that a "strong" performance actually means "average" defies the common usage and definition of "strong," Plaintiff was not fired because his overall performance reviews were average. Rather, Plaintiff was fired because his supervisors decided that he "lacked the requisite skills and management potential" to "fill management positions above" his current role. Def.'s Mot. for Summ. J., Ex. C, Decl. of Murray, at para. 3. Because Plaintiff received "adequate" ratings in a number of relevant categories, the performance reviews do not make it more likely than not that Defendant's proffered reason for terminating Plaintiff was a pretext for firing Plaintiff because of age-related animus.

Next, Plaintiff points to the fact that the termination letter incorrectly stated that his position was being eliminated, as opposed to him being terminated for poor performance, and alluded to downsizing as the reason for his termination, as evidence of pretext for age discrimination. While it may be true that the letter is misleading as to the reason why Plaintiff was fired, it does not make it more likely than not that Defendant was motivated to fire him because of age animus. As mentioned above, six employees were fired as a result of the "strengthen the bench" initiative; three had their positions eliminated and three were replaced. All received a letter with identical language. Moreover, Plaintiff was sent an email that

13

informed him that his job was not eliminated, and that the company was soliciting applicants to replace him, and thus, is evidence that the company was not hiding the real reason for his termination from him.  Therefore, the sheer weight of the totality of the circumstantial evidence of discrimination does not make it more likely than not that the employer's explanation is a pretext, or that Defendant's proffered reason for termination is not worthy of credence.

## IV.   CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED.**

>   s/Marianne O. Battani
>   MARIANNE O. BATTANI
>   UNITED STATES DISTRICT JUDGE

DATED: May 17, 2006

## CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

>   s/Bernadette M. Thebolt
>   DEPUTY CLERK